730

Circuit Court of Appeals, Ninth Circuit.
March 10, 1930.

Rehearing Denied April 7, 1930.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for appellant.

Lyon & Lyon, Frederick S. Lyon, Lewis E. Lyon, and Leonard S. Lyon, all of Los Angeles, Cal., for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge.

By the decree below the court dismissed appellant's bill charging infringement of patent No. 1,219,891, to Williams. The patent relates to store furniture consisting of sectional shelving or merchandise cabinets very similar in its general character to well-known sectional bookcases and office file cabinets. The detachable units are so constructed that they may be superimposed one upon the other, the stack resting upon a base to match and capped with a top unit in the nature of a cornice. As with sectional bookcases, a plurality of such stack units may be set up along the wall in close end to end contact and with abutting engagement so that when completed the whole has a measure of the appearance and stability of a single structure. To this extent appellant claims no invention. Such novelty, if any, as the patent discloses, resides in what may be referred to as the "pilaster" unit. Plaintiff's position is that, with abutting stacks as above described, the exposed joints are unsightly, and to give a more finished appearance Williams conceived the idea of positioning the stacks a short distance apart, end to end, and covering the intervening space by means of a unit having in its exposed surface the appearance of a post or pilaster extending over and fitting tightly against the edges of the adjacent stacks. Firmly attached to and extending at right angles from the posterior surface of the pilaster are flanges so spaced apart that when inserted between the stacks they rest in close contact with the ends thereof. The flanges are provided at suitable intervals with notches or slots opening at the flange edges and extending inwardly and upwardly so as to engage with headed pins or posts projecting at corresponding intervals from the end surfaces of the stacks. The engagement of the slotted flanges with these posts serves to draw the pilaster close to the face edges of the stacks, and to unite the stacks into a single structure.

Such is the patentee's preferred form. Of course there is some range for equivalents, but under express admissions made at the argument that is, at most, a very narrow one. It is conceded that the pilaster itself, or the pilaster effect in appearance, is without novelty; and further, that only pilasters readily detachable and held in position by means extending from the rear surface thereof and engaging with the ends of the adjacent stacks are to be regarded as falling within the plaintiff's claims.

Assuming, but not deciding, that plaintiff's structure exhibits a measure of patentable novelty, we are clearly of the opinion that the court below was right in holding that defendant does not infringe. In view of the concessions referred to, which were made inevitable by the state of the prior art, the most that plaintiff can claim is novelty in the means of attaching the pilaster, that is, the inward projecting slotted flanges engaging with the end posts (or other means closely similar) by the use of which the pilaster may be easily applied and removed. Permanency is entirely subordinated to ready detachability. There are to be no nails, screws, bolts or other means requiring tools or mechanical work. True, in appellee's

structure the same exterior appearance is presented but, "it is not the result, effect, or purpose to be accomplished which constitutes an invention, but the mechanical means or instrumentalities by which the object sought is to be attained. Patents cover the means employed to effect results." Kohler v. Cline Electric Mfg. Co. (D. C.) 28 F.(2d) 405, 406. "The thing patented is the particular means devised by the inventor by which that result is attained, leaving it open to any other inventor to accomplish the same result by other means." Electric R. Signal Co. v. Hall Ry. Signal Co., 114 U. S. 87, 5 S. Ct. 1069, 1075, 29 L. Ed. 96.

In respect of the sectional units, the stack combination thereof, the spacing apart of the stacks and the covering of the intervening space by a pilaster, appellee's structure may be said to be identical with that of appellant. But all of these features, both separately and in combination, were old in the art, and, as we have seen, for them appellant makes no claim. Appellees' pilaster or finishing strip is nailed or glued to a quadrilateral rectangular frame projecting at right angles from the posterior surface thereof. When interposed in the space between the ends of two adjacent stacks, the frame is, at its exterior edge, in alignment with the exterior edge of the stack ends and completely fills such space. In installing this equipment, the base units of two or more stacks are placed end to end upon the floor, appropriately spaced apart; frames of the desired height with pilasters permanently attached are interposed in the spaces; and by means of bolts passing through the end members of the bases and the intervening lower member of the frame, the three units, that is, the two bases and the frame, are bound firmly together. The desired sectional units for merchandise are then installed by superimposing one upon the other upon the base between two such frames, and the stack is completed by a top or cornice unit; and these top units are bound together with the intervening uppermost member of the frame by bolts substantially in the manner in which the bases are bound together. Screws are then driven diagonally forward through the end members of at least some of the sectional units, into the projecting portions of the pilaster, to bind the pilaster closely and firmly to the stacks.

Manifestly, we think, the means thus employed are substantially different from and are in no real sense the equivalent of the slotted flanges covered by plaintiff's patent. As already suggested, the patent puts great emphasis upon ready detachability, whereas in defendant's structure ready detachability is in a large measure sacrificed to considerations of permanency and stability. It may be true that the cases which appellant actually manufactures and markets much more closely resemble the defendant's structure, but its suit is necessarily predicated, not upon what it manufactures, but upon what it has patented.

Affirmed.