AILEEN MILLS CO., Inc. and Morgan-Jones, Inc., Plaintiffs,

v.

OJAY MILLS, INCORPORATED, and Ostow & Jacobs, Inc., Defendants.

United States District Court
S. D. New York.
Oct. 24, 1960.

Burke & Burke, New York City, for plaintiffs, George I. Harris, New York City, of counsel, and Eaton, Bell, Hunt & Seltzer, Charlotte, N. C., Donald M. Seltzer, Charlotte, N. C., of counsel.

Charles Sonnenreich, New York City, for defendants.

LEVET, District Judge.

Defendants moved for summary judgment to dismiss the cause of action for alleged patent infringement of plaintiffs' Design Patent No. 181,148, covering a textile fabric or similar article. Defendants claim that the bedspreads manufactured and sold by them do not infringe upon the design of the fabric illustrated and claimed in the patent in suit. This is a non-jury case.

The defendants' contentions are essentially as follows:

(1) The fabric illustrated in the patent drawings or print of the swatch submitted by the applicant (plaintiffs here) consists of a series of cut loops, flat in appearance in parallel rows, spaced between longitudinally extending rows of yarn. The examiner stated that "it appears that the elements arranged in vertical rows between the broken lines are tufts of yarn secured by weft-wise stitches on the body of the fabric." A photostatic copy of plaintiffs' patented design is shown at the end of this opinion (see Figure A).

(2) The plaintiffs' fabric, as manufactured and sold (Exhibit A attached to the complaint), is not the same as that shown on the design patent as filed. Exhibit A, instead of revealing cut loops between the longitudinally extending arms, shows longitudinally extending yarns between parallel rows of tufts or balls of yarn. (See Figure B appended at the end of this opinion.)

(3) The defendants' fabric (Exhibit B attached to the complaint), alleged to infringe upon that of plaintiffs, consists, it is true, of the same type of fabric as plaintiffs' (Exhibit A), but it differs, as does that of plaintiffs, from the design fabric patented, as explained in (2) above. A photostatic copy of defendants' fabric is shown at the end of this opinion (Figure C).

(4) The fabric design used by defendants is not subject to patent and was not patented by plaintiffs.

The claims of plaintiffs urged to sustain the validity of the patent are as follows:

(1) The distinctive feature of the design, as clearly shown in the patent and its file history, is the combination of

longitudinally extending parallel rows of tufts with alternating longitudinally extending parallel metallic yarns.

(2) Prior to this fabric there was no bedspread on the market combining the distinctive characteristics of parallel rows of tufts with parallel metallic yarns alternating with the rows of tufts.

(Plaintiffs concede that plain-tufted bedspreads, without metallic yarns, have been known for years and that the patent in suit does not disclose or claim such a bedspread.)

(3) Both plaintiffs' fabric and defendants' fabric, annexed to the complaint as Exhibits A and B, have lines of metallic fabric extending between the tufts.

(4) The plaintiffs' fabric before washing is identical in the cut tufts with the designed fabric as patented. When washed, the same fabric appears as in Exhibit A attached to the complaint. (A photograph of plaintiffs' fabric, washed and unwashed, appears in Exhibit A attached to A. H. Grant's opposing affidavit.)

In opposing the motion, plaintiffs also contend that issues of fact remain as to the infringement action and that the unfair competition action is closely intertwined and inseparable.

The defendants' position on this motion is simple. David Ostow states in his affidavit of September 12, 1960:

(1) "The only basis for defendants' motion is that the bedspreads manufactured and sold by them do not infringe the design of the fabric covered by the patent in suit in that the two designs are entirely dissimilar." (pp. 2–3)

(Thus the question of the validity of the design patent itself is not involved in this motion, although raised in defendants' answer by way of defense, but not by counterclaim.)

(2) "The granting of the motion for summary judgment will eliminate from the complaint the charge of patent infringement and leave for determination the question of unfair competition in the sale of finished bedspreads." (p. 3)

### 1. Motion for Summary Judgment

This motion for partial summary judgment appears valid. See Rule 56(b), Federal Rules of Civil Procedure, 28 U.S. C.A. Under Rule 56(d), the duty then falls upon the court to specify the remaining issues.

■ Where a defendant moves for summary judgment in a patent infringement case on the ground that he has not infringed the patent involved, the issue of invalidity of the patent itself will be disregarded. Electrical Fittings Corp. v. Thomas & Betts Co., 1939, 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263; Duplex Electric Co. v. Padua Hold-Up Alarm Corporation, 2 Cir., 1929, 30 F.2d 344; Rubinstein v. Silex Co., D.C.S.D.N.Y. 1947, 73 F.Supp. 336.

■ The issue of infringement, although coupled with a charge involving unfair competition, may be separately determined upon summary judgment. Meikle v. Timken-Detroit Axle Co., D.C. E.D.Mich.S.D.1942, 44 F.Supp. 460; Berghane v. Radio Corporation of America, D.C.D.Del.1945, 4 F.R.D. 446; E. I. Du Pont De Nemours & Co. v. United States Camo Corp., D.C.W.D.Mo.W.D. 1956, 19 F.R.D. 495.

In the Du Pont case, supra, at page 498, R. Jasper Smith, District Judge, stated:

"* * * The partial, interlocutory summary adjudication is merely a pretrial determination that certain issues are considered established for the trial of the case, and is similar to the preliminary order under Rule 16. Its purpose, like that of the pre-trial order, is to expedite litigation. See Moore's Federal Practice, Vol. 6, Section 56.20(3), Part 4."

■■ The plaintiffs assert that the causes of action for patent infringement and unfair competition are totally interrelated factually; that the same evidence would be offered on both issues; that it is the practice in this district to deny such motions for summary judgment up-

on the ground that no expense is saved. With this I am forced to disagree. Granting or withholding a summary judgment is never based solely upon the factor of saving time or expense.

In Reynolds Pen Company v. W. A. Sheaffer Pen Company, D.C.S.D.N.Y. 1958, 22 F.R.D. 502, 504, Judge Bryan of this court declared:

"The issue on a motion for summary judgment is not what determination of fact the court would make if it were called upon to decide the case on the papers before it. The question is whether or not there are any issues of fact to be determined. If so, they cannot be determined on the motion but must be tried, in this case to a court and jury. Colby v. Klune, 2 Cir., 178 F. 2d 872; Arnstein v. Porter, 2 Cir., 154 F.2d 464; Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130."

As previously stated by Judge Rifkind in Rubinstein v. Silex Co., D.C.S.D.N.Y. 1947, 73 F.Supp. 336:

" * * * The authorities are in accord that, absent triable issues of fact, a motion for summary judgment should be granted in patent cases. Brown v. Ford Motor Co., D.C.E.D.Mich.1944, 57 F.Supp. 825; S. R. Leon, Inc. v. Parfums Schiaparelli, D.C.S.D.N.Y.1940, 35 F.Supp. 641; Gasifier Mfg. Co. v. Ford Motor Co., D.C.E.D.Mo.1939, 1 F.R.D. 10. In any event, expressions of doubt as to the propriety of summary procedure are found in patent cases dealing with adjudications of validity, not infringement."

### 2. Patent Infringement

■ Design patents are presumably based on what the application therefor discloses its appearance to be. Application of Lurelle Guild, U.S.Ct. of Customs & Patent Appeals, 1953, 204 F.2d 700. Here, Judge Cole wrote in part:

"It is a fundamental principle of patent law that the patentability of a design application is to be tested in the light of its appearance as a whole. Bearing in mind that the law applicable to design patents is not different from that applicable to other patents, the determinative factor relative to the issue of anticipation is founded in identity or substantial similarity of appearances. (at page 703.)

* * * * *

" * * * Design patents are presumably based on what the application therefor. discloses its appearance to be. While, as indicated, the applicant asks that this rule be not applied in this instance because, as evidenced by the proof submitted by him, the McKay process would not actually produce shingles like those shown in the drawings. We agree thoroughly with the examiner and Board of Appeals in rejecting this contention by applicant." (at page 704.)

Circuit Judge Rogers in Ashley v. Weeks-Numan Co., 2 Cir., 1915, 220 F. 899, 901 declared that: "In a design patent the appearance is the subject-matter of the patent * * *. The patentability of a design is determined by its appeal to the eyes, and not by the presence or absence of a mechanical function."

However, "[a] patentee's grant of privilege consists only in that which is both described and claimed, while drawings assist the specification, but do not control. Fulton Co. v. Powers Co. (C.C. A.) 263 Fed. 578." Whiting Mfg. Co. v. Alvin Silver Co., 2 Cir., 1922, 283 F. 75, 79, certiorari denied 1922, 260 U.S. 731, 43 S.Ct. 93, 67 L.Ed. 486.

■ It is thus fundamental that the patent grant consists only of that which is described and claimed. Whiting Mfg. Co. v. Alvin Silver Co., supra. The present plaintiffs' patent claim was for the "ornamental design for a textile fabric or similar article, as shown." No description in words appears in the patent application. In a communication by

an examiner after submission of the fabric swatch from which the patent print was made, mentioned above, he noted that "it appears that the elements arranged in vertical rows between the broken lines are tufts of yarn secured by weft-wise stitches on the body of the fabric."

■ The absence of a written description necessarily bears upon the construction of the plaintiffs' patent and the immediate question of infringement. Ashley v. Samuel C. Tatum Co., 2 Cir., 1911, 186 F. 339, 342. The patent at hand should, therefore, be construed as limited substantially to the pattern shown in the drawing. Ashley v. Samuel C. Tatum Co., supra; American Fabrics Co. v. Richmond Lace Works, 2 Cir., 1928, 24 F.2d 365, 367; Forman v. American Exp. Co., D.C.S.D.N.Y.1941, 37 F.Supp. 82, 83; 1 Walker on Patents (Deller Ed.) § 137, at 431 (1937). See also Gold Seal Importers, Inc. v. Morris White Fashions, Inc., 2 Cir., 1941, 124 F.2d 141, 142.

An examination of the patent file papers, including the drawing of plaintiffs' design as filed, reveals that neither the design of the fabric manufactured and sold by the plaintiffs, nor that used by the defendants in the bedspreads in question, is exactly the same as that described by means of the design print in the patent file.

It appears that defendants' allegedly infringing fabric does resemble the patented design in that (1) the former has parallel metallic lines; and (2) it has the tufts (which, unlike plaintiffs' design, are arranged perpendicular to the lines of metallic yarn) as they appear *after* washing.

■ Plaintiffs' design must be viewed as a whole. In Application of Jennings, U.S.Ct. of Customs & Patent Appeals, 1950, 182 F.2d 207, 208, 37 CCPA 1023, Chief Judge Garrett wrote:

"In considering patentability of a proposed design the appearance of the design must be viewed as a whole, as shown by the drawing, or drawings, and compared with something in existence—not with something that might be brought into existence by selecting individual features from prior art and combining them, particularly where combining them would require modification of every individual feature, as would be required here."

Likewise, Judge Learned Hand, in Simson Bros., Inc. v. Blancard & Co., 2 Cir., 1927, 22 F.2d 498, 499, observed that "every part of any pattern does not become patentable when broken from its whole."

Thus we come to consider what issues respecting infringement are subject to dispute; what issues of fact are to be determined. The court, by means of a hearing, has conferred at length with counsel for both sides, interrogating them as to any facts or issues which, in their opinion, would be necessary or useful in determining this motion.

The plaintiffs assert that there are nine factual issues (see Paragraph 23 of A. H. Grant's affidavit of September 7, 1960, pp. 6–7). Actually, this court believes, there is but one—and that is, whether the bedspread fabric design manufactured and sold by the defendants (which appears similar to that manufactured and sold by the plaintiffs) is covered by the design patent in suit.

■ Substantial identity is necessary to establish infringement. In the leading case on infringement of design patents, Gorham Mfg. Company v. White, 1871, 14 Wall. 511, 81 U.S. 511, 20 L.Ed. 731, Mr. Justice Strong pointed out:

(1) It is the appearance itself, no matter by what agency caused, that constitutes, mainly, if not entirely, the public contribution which the law deems worthy of recompense. See 81 U.S. at page 525.

(2) The true test of the identity of design is the sameness of appearance. The judge is the eye which views one figure and then another and ascertains whether or not they are the same (quoting Holdsworth v. McCrea, 2 Appeal

Cases, House of Lords, 388). See 81 U.S. at page 526.

(3) Furthermore, the test is not the eye of the expert, but the eyes of men generally:

> "We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." 81 U.S. at page 528.

This standard was similarly applied in this circuit in American Fabrics Co. v. Richmond Lace Works, 2 Cir., 1928, 24 F.2d 365, 367:

> " * * * The test of infringement is whether the two designs have substantially the same effect upon the eye—not the eye of an expert, but the eye of an ordinary observer, giving such attention to the matter as purchasers usually give."

See also International Silver Co. v. Pomerantz, 2 Cir., 1959, 271 F.2d 69, 72; Nebel Knitting Co. v. Sanson Hosiery Mills, Inc., 4 Cir., 1954, 214 F.2d 781, 784–785; Gold Seal Importers, Inc. v. Morris White Fashions, Inc., 2 Cir., 1941, 124 F.2d 141; Geo. Borgfeldt & Co. v. Weiss, 2 Cir., 1920, 265 F. 268, 271; Forman v. American Exp. Co., D.C.S.D.N.Y.1941, 37 F. Supp. 82, 83.

 As already indicated, the comparison to be made is between the print submitted by the applicant for the design patent, on the one hand, and the bedspread fabric design manufactured and sold by defendants, on the other. It is not an examination of the respective designs of the plaintiffs and defendants, as sold, which, in fact, are indeed identical. It is a basic principle of patent law that infringement does not depend upon what is manufactured or sold by the patentee, but rather upon what has been patented. Magnavox Co. v. Hart & Reno, 9 Cir., 1934, 73 F.2d 433, 445–446. The court declared in Grand Rapids Show Case Co. v. Weber Show Case & Fixture Co., 9 Cir., 1930, 38 F.2d 730, certiorari denied Grand Rapids Store Equipment Corp. v. Weber Show Case & Fixture Co., 1930, 281 U.S. 767, 50 S.Ct. 465, 74 L.Ed. 1174:

> " * * * It may be true that the cases which appellant actually manufactures and markets much more closely resemble the defendant's structure, but its suit is necessarily predicated, not upon what it manufactures, but upon what it has patented." 38 F.2d at page 731.

Plaintiffs argue that their design patent is not limited to what is merely shown in the patent drawing, but extends to the "inventive concept embodied in that design set forth in the drawings." This "inventive concept" supposedly encompasses "a row or plurality of rows of tufts with intervening metallic yarn." Plaintiffs deem it "immaterial" whether the metallic yarns be lengthwise or crosswise. They further assert that the "inventive concept" is as apparent in the unwashed fabric as it is in the prewashed fabric, a contention with which this court is unable to agree.

In his affidavit of September 7, 1960, A. H. Grant, an officer of Aileen, declared that "the distinctive feature of this new bedspread design, as clearly shown in the patent and its file history, is the combination of longitudinally extending parallel rows of tufts with alternating extending parallel metallic yarns. The resulting fabric is pleasing in appearance and ornamentally distinctive, and has enjoyed substantial commercial success." (see p. 2.)

 One can readily appreciate the buying public's changing tastes and the ephemeral popularity of current fabric designs. Both sides here have accordingly urged an expeditious adjudication of the instant controversy. These very factors provide the more reason why plaintiffs' contentions must be deemed untenable. As was aptly pointed out in

Rubinstein v. Silex Co., D.C.S.D.N.Y. 1947, 73 F.Supp. 336, 337:

" * * * Where the patent in question is a modest improvement in a field where inventive skill has not been lacking, the surrounding pressure of the art serves to restrict the effective range of the patent to the four corners of its claims."

The following observations of Judge Swan in American Fabrics Co. v. Richmond Lace Works, 2 Cir., 1928, 24 F.2d 365, 367, also bear particular relevancy to the case at hand:

"A design which gains its patentability from combining old lines and conventionalized figures into a novel pattern for such an article as lace— a field wherein new patterns are constantly brought out, enjoy ephemeral success, and disappear with the changing whim or taste of the trade, and where possible variations on a given pattern are almost infinite in number—should not, we think, receive any broad range of equivalents."

To this court, the total impression that defendants' fabric would make upon the eye and mind of the ordinary purchaser would not be that made by the plaintiffs' patented design. The two are not identical. Distinctions are evident— all perhaps as a result of the washing. This is a factor, however, which plaintiffs, if desirous of protecting the washed appearance, should have foreseen. The parties are in accord that bedspreads are normally washed before being sold. It is apparently a custom of the trade and, in this respect, a facet of the manufacturing process. Plaintiffs' fabric, after washing, presents a definite appearance of rounded tufts which is most different from, and less distinctive than, the clipped threads appearing in the patented design. Moreover, the metallic threads appear less emphatic or defined when thus combined with the rounded tufts. In my opinion, an infringement of plaintiffs' claim has not been made out.

Consequently, in view of the foregoing, the defendants' motion for summary judgment for lack of infringement must be granted.

I therefore find:

(1) The fabric design in defendants' bedspreads, as manufactured and sold, is distinct from and dissimilar to that in plaintiffs' patented fabric design by reason of the rounded tufts, which appear in the former, instead of the clipped threads found in the patented design.

(2) As a result of the production of the rounded tufts, the metallic thread in such fabric appears less prominent than in the fabric with the cut thread appearance.

Hence, I hold as a conclusion of law that the fabric produced by defendants does not infringe upon the fabric covered by plaintiffs' patent.

Defendants seek an award for attorney's fees "for the unnecessary and costly expense of defending this litigation." (See memorandum for defendants, p. 7.)

Title 35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." This power is discretionary, see Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., D.C.S.D.N.Y. 1954, 121 F.Supp. 490, 512–513, affirmed 2 Cir., 1956, 233 F.2d 148, and has been exercised where circumstances render it "grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear," Park-In-Theatres, Inc. v. Perkins, 9 Cir., 1951, 190 F.2d 137, 142.

The issues concerning unfair competition, other than those based on infringement, still remain but need not be specified here. It would seem more appropriate to consider defendants' request for attorney's fees after a determination of the unfair competition charge has been made, rather than at this posture of the litigation. Accordingly, this question is referred to the trial court.

Defendants' motion for summary judgment is granted.

Settle order on notice.

# United States Patent Office

Dec. 16, 1947

Patent Oct. 8, 1947

Figure A

Figure B

Figure C