In re CYBERNETIC SERVICES, INC.,
dba Silent Radio, Inc., Debtor.

Byron Z. Moldo, Chapter
7 Trustee, Appellant,

v.

Matsco, Inc.; Matsco Financial
Corporation; and Petitioning
Creditors, Appellees.

BAP No. CC–98–1690–PKRi.
Bankruptcy No. SV 97–15576 AG.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted March 17, 1999.

Decided Sept. 29, 1999.

David A. Greene, Saltzburg, Ray & Bergman, Los Angeles, CA, for Byron Z. Moldo, Chapter 7 Trustee.

James A. Tiemstra, Miller, Starr & Regalia, Walnut Creek, CA, for Matsco, Inc. and Matsco Financial Corp.

Paul M. Brent, Steinberg, Nutter & Brent, Santa Monica, CA, for Cybernetic Services, Inc.

Before: PERRIS, KLEIN and RIEGLE,[1] Bankruptcy Judges.

## *OPINION*

PERRIS, Bankruptcy Judge.

This appeal raises the question of whether perfection of a security interest in a patent requires a filing with the United States Patent & Trademark Office ("Patent Office"). The bankruptcy court decided that it did not, and granted the motion of Matsco, Inc. ("Matsco") and Matsco Financial Corporation ("Financial") for relief from the automatic stay[2] to foreclose their patent lien. We AFFIRM.

### I.  FACTS

The primary asset of the bankruptcy estate of Cybernetic Services, Inc. ("Debtor") is a patent for a data recorder designed to capture data from a video signal regardless of the horizontal line in which the data is located ("the Patent").

Matsco and Financial filed a motion requesting relief from the automatic stay in order to foreclose their security interest in the Patent. Matsco and Financial have a blanket security interest in all of Debtor's assets, including "general intangibles." The parties agree that this was sufficient to create a security interest in the Patent. A UCC–1 Financing Statement covering, *inter alia,* general intangibles was properly prepared, executed by Debtor and timely filed with the Secretary of State of the State of California Matsco and Financial timely filed a UCC–2 Continuation Statement. Matsco and Financial did not file either the Financing Statement or any other document with the Patent Office.

The chapter 7 trustee ("Trustee") asserted that Matsco and Financial should be denied relief from stay because they do not have a perfected security interest in the Patent. Trustee argued that, in order to perfect a security interest in the Patent, a creditor must make the appropriate filing with the Patent Office. The bankruptcy court determined that Matsco and Financial were not required to file with the Patent Office in order to perfect their security interest in the Patent. The court concluded that Article 9 of the Uniform Commercial Code ("UCC"), as adopted by California, rather than the Patent Act, governs the perfection of a security interest in a patent. The bankruptcy court granted Matsco and Financial relief from the automatic stay, and trustee appeals.

### II.  ISSUE

Whether the bankruptcy court erred in ruling that filing a UCC financing statement with the California Secretary of State rather than with the Patent Office perfected Matsco's and Financial's security interest in the Patent.

### III.  STANDARD OF REVIEW

■  The panel reviews a bankruptcy court's order granting relief from the stay for an abuse of discretion. *In re Montclair Retail Ctr., L.P.,* 177 B.R. 663, 664 (9th Cir. BAP 1995).  A bankruptcy court

---

1.  Hon. Linda B. Riegle, Chief Bankruptcy Judge for the District of Nevada, sitting by designation.

2.  *See* 11 U.S.C. § 362.

necessarily abuses its discretion if it bases its ruling on an erroneous view of the law. *Cannery Row Co. v. Leisure Corp. (In re Leisure Corp.)*, 234 B.R. 916, 920 (9th Cir. BAP 1999). The bankruptcy court's conclusions of law are reviewed *de novo. United States v. Wyle (In re Pacific Far East Lines, Inc.)*, 889 F.2d 242, 244–45 (9th Cir.1989).

## IV. DISCUSSION

### A. *Overview*

The parties agree that, if Matsco's and Financial's security interest is perfected, there is no equity in the Patent available for the benefit of the estate and relief from stay should be granted pursuant to 11 U.S.C. § 362(d)(2). If Matsco and Financial did not perfect their lien on the Patent, Trustee's rights as a hypothetical lien creditor under 11 U.S.C. § 544(a)(1) are superior with respect to the Patent to those of Matsco and Financial.

Thus, the question before the panel is whether Matsco and Financial have a perfected security interest in the Patent. Answering the question depends upon whether a creditor must file or record notice of its interest in a patent with the Patent Office in order to perfect its security interest. This is a question of law that requires

the interpretation of §§ 9104(a) and 9302(3)(a) of the California Commercial Code and of the Patent Act,[3] in particular 35 U.S.C. § 261.

### B. *The Analytical Framework*

In dealing with the interrelationship of a federal statute and a state statute, the initial question is whether the federal statute has preempted state law. If the Patent Act has not preempted state law, we must consider whether perfection of a security interest in a patent is governed by Article 9 of the UCC, as adopted in California.[4] The UCC provides two exclusions from its scope that are pertinent in this appeal. Section 9104(a)[5] provides that Article 9 will not apply to security interests "to the extent" that a federal statute regulates the rights of parties to and third parties affected by transactions relating to certain property. Even if the § 9104(a) exclusion does not apply, the Article 9 filing requirements do not apply to transactions as to which there is a federal statute that provides for national registration of a security interest or that specifies a place for filing a security interest that is different from the place designated in Article 9. § 9302(3)(a).[6] The essence of Trustee's argument is that the federal patent registration system either preempts

3. The Patent Act of 1952, as amended, 35 U.S.C. § 1–376 (1984).

4. The parties agree that California law controls to the extent it is not preempted by the Patent Act.

5. Cal.Comm.Code § 9104(a) provides:
    This division does not apply to . . . :
    (a) A security interest subject to any statute of the United States to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property.

6. Cal.Comm.Code § 9302 provides, in pertinent part:
    (3) The filing of a financing statement otherwise required by this division is not necessary or effective to perfect a security interest in property subject to any of the following:

(a) A statute or treaty of the United States which provides for a national or international registration or a national or international certificate of title or which specifies a place of filing different from that specified in this division for filing of the security interest.
. . . .
(4) Compliance with a statute or treaty described in subdivision (3) is equivalent to the filing of a financing statement under this division and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith except as provided in Section 9103 on multiple state transactions. Duration and renewal of perfection of a security interest perfected by compliance with the statute or treaty are governed by the provisions of the statute or treaty; in other respects the security interest is subject to this division.

state law or results in exclusion of perfection of security interests in patents from the UCC.

For reasons discussed below, we conclude that the Patent Act does not preempt state law and that Article 9 of the UCC controls the perfection of a security interest in a patent.

## C. The Patent Act Does Not Preempt State Law Regarding Perfection of Security Interests

■ Federal law preempts state law when state law "conflicts with federal law, would frustrate a federal scheme, or where Congress clearly intended to occupy the field." *Saridakis v. United Airlines,* 166 F.3d 1272, 1276 (9th Cir.1999).

■ Section 261 of the Patent Act, entitled "Ownership; assignment," effectively defines the scope of the Act.[7] It provides that an interest in a patent is assignable and an assignment is void against a subsequent purchaser or mortgagee without notice of the assignment, unless the assignment has been recorded in the Patent Office. Determining the extent to which the Patent Act regulates the perfection of security interests depends on whether the term "assignment" in the Act includes the grant of a security interest and whether every secured party and lien holder is a "mortgagee." If so, the Patent Act would

effectively control perfection of security interests and liens.

The term "assignment" in patent law involves the transfer of title. *See Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1551 (Fed.Cir.1995) ("assignment" is the conveyance of legal title in patent law); *Public Varieties of Miss., Inc. v. Sun Valley Seed Co.,* 734 F.Supp. 250, 252 (N.D.Miss.1990) ("assignment is defined as a conveyance which transfers the entire bundle of common law rights residing in a patent").

Before the adoption of the UCC, a variety of personal property security devices were used, including chattel mortgages, that placed title in the mortgagee. An example of a pre-UCC security interest involving the transfer of title was the security interest at issue in *Waterman v. Mackenzie,* 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). In *Waterman,* the Supreme Court held that a patent mortgage was an assignment when the mortgage was created by transferring ownership of the patent, subject to defeasance upon payment of a loan.[8]

The UCC created a single security device, which was not dependent on who had title to the property. 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 30–1 (4th ed.1995). Section 9–202 of the UCC provides that Article 9 applies to secured transactions involving personal

7. Section 261 provides:

> Subject to the provisions of this title, patents shall have the attributes of personal property.
> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.
> . . . .
> An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the

date of such subsequent purchase or mortgage.

8. We agree with *In re Transportation Design & Technology, Inc.,* 48 B.R. 635, 639 (Bankr. S.D.Cal.1985), that *Waterman*

> stands for the proposition that a bona fide purchaser holding a duly recorded conveyance of the ownership rights in a patent or a mortgagee who has recorded its interest as a transfer of title with the Patent Office will defeat the interests of a secured creditor of the grantor or mortgagor who has not filed notice of its security interest in the Patent Office.

*Waterman* does not hold that all security interests, even those that do not involve a transfer of an ownership interest, must be recorded in the Patent Office to perfect the lien.

property regardless of "whether title to collateral is in the secured party or in the debtor." Because transferring title no longer has significance in creating a security interest in personal property, most security interests created after adoption of the UCC do not involve the transfer of title.

The administrative rules regulating the function and operation of the Patent Office are consistent with the conclusion that the focus of the Patent Act recording provisions is transfers of title. The rules are found in Title 37 of the Code of Federal Regulations.[9] 37 C.F.R. 3.11(a) provides that "assignments," accompanied by a cover sheet, will be recorded, and that "other documents" affecting title will be recorded at the discretion of the Commissioner. Assignments are defined as transfers by a party of all or part of its right, title and interest in a patent or patent application. 37 C.F.R. 3.1. The terms "security interest" and "lien" are not included in any of the C.F.R. provisions governing patents.[10] The reason for this omission is that:

A security interest is not an "assignment, grant or conveyance" of a patent. Patent law adheres to strict concepts of title, in order to protect the ownership of new inventions. It therefore distinguishes "assignments" of patents (of which "grants" and "conveyances" are

specific types) from all other transfers (which are called "licenses").

William C. Hillman, *Documenting Secured Transactions* 2–19 to 2–20 (1998) (footnotes omitted).

This omission of security interests should be contrasted with other federal statutes that expressly include security interests and liens within their scope. One example is the Copyright Act. The Copyright Act defines transfers of ownership:

A "transfer of copyright ownership" is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license.

17 U.S.C. § 101. The inclusion of "hypothecation" within the scope of what constitutes "transfer of copyright ownership" evidences an intent to include security interests. The term "hypothecate" means:

To pledge property as security or collateral for a debt. Generally, there is no physical transfer of the pledged property to the lender, nor is the lender given title to the property; though he has the right to sell the pledged property upon default.

*Black's Law Dictionary* 742 (6th ed.1990).

In addition, § 204 of the Copyright Act sets forth the method of executing trans-

---

9.  37 C.F.R. 3.1 *et seq.*

10.  The *Manual of Patent Examining Procedure* (7th ed. 1998) ("Patent Manual") is published by the Patent Office to provide a reference work on Patent Office practices and procedures. It is clear from the Patent Manual that the Patent Office does not consider a security interest or lien to be an "assignment" subject to the mandatory recording provision of 37 C.F.R. 3.11.

The recording of "assignment" documents is governed by section 302 of the Patent Manual. Section 302 cites the language of 37 C.F.R. 3.11 pertaining to assignments of applications, patents and registrations as documents which "will be recorded." In contrast, Section 313 denotes security interests as documents other than assignments and provides

that these documents, which do not affect title, "may be recorded at the discretion of the Commissioner." Documents that convey a security interest are recorded under Section 313 "in the public interest in order to give third parties notification of equitable interests or other matters relevant to the ownership of a patent or application."

Because the Patent Manual expressly "does not have the force of law or the force of the rules in Title 37 of the Code of Federal Regulations," *see* Foreword to Patent Manual, it appears that the discretionary recording is for purposes of providing actual notice rather than the constructive notice provided through provisions of Article 9 of the UCC. *See generally* Alice Haemmerli, *Security Interests: Where Intellectual Property and Commercial Law Collide,* 96 Colum.L.Rev. 1645, 1668–72 (1996).

fers of copyright ownership. Section 205 clearly sets forth a priority scheme for conflicting transfers and provides that recordation of a document in the Copyright Office "gives all persons constructive notice of the facts stated in the recorded document...."

The extent to which the Federal Copyright Act regulates transfers, including security interests, leads to the conclusion that it preempts state methods of perfecting security interests in copyrights. *National Peregrine, Inc. v. Capitol Fed. Sav. and Loan Ass'n (In re Peregrine Entertainment, Ltd.)*, 116 B.R. 194, 199 (C.D.Cal.1990). The failure of the Patent Act to include security interests within the scope of its regulation leads to the opposite conclusion; the Patent Act does not preempt state regulation of security interests in patents. *See In re 199Z, Inc.*, 137 B.R. 778 (Bankr.C.D.Cal.1992) (Lanham Act trademark legislation does not preempt state regulation of security interests because it does not expressly include security interests within its scope).

■ The purpose of the Patent Act is "to protect the development of new technology and encourage its use." *Transportation Design*, 48 B.R. at 638. It accomplishes this purpose by providing a "comprehensive regulatory scheme governing ownership rights in a patent...." *Id.* In contrast to the Copyright Act and the other federal statutes discussed in part IV.D. below, the Patent Act is silent regarding rights of lien claimants with competing claims to a patent.

A security interest is "an interest in personal property or fixtures that secures payment or performance of an obligation." Cal.Comm.Code § 1201(36)(a). It is not necessarily a transfer of title to the collateral. In order for a security interest to accomplish its purpose it must protect the secured party against "subsequent or competing lien claimants of its debtor ...

against the debtor transferring title to the collateral free of [the secured party's] interest." *Transportation Design*, 48 B.R. at 639. Although the Patent Act effectively performs the second function, it fails to accomplish the first.

Regulation of ownership and license rights "does not ... necessarily conflict with an exercise of state rights over the questions of perfection and priority of security interests in the patent." *Id.* at 638. *See also City Bank & Trust Co. v. Otto Fabric, Inc.*, 83 B.R. 780, 782 (D.Kan.1988) (because Congress has not expressly required the filing of an assignment with the Patent Office to perfect a security interest in a patent, notwithstanding amendment to the Patent Act following the advent of modern commercial law, the Act leaves open the area of protection against the interests of lien creditors); *Holt v. United States*, 13 UCC Rep. Serv. 336 (D.D.C. 1973) (35 U.S.C. § 261 applies only where title has been conveyed, not to creation of a security interest).[11]

As one of the treatise writers observed,

There is much wisdom in the balance struck by *Transportation Design* and *Otto Fabric*. Together, the cases recognize that Section 261 of the Patent Act is not a secured financing statute in the modern sense, its use of the word "mortgagee" notwithstanding. Rather, it is concerned with ownership or title transfers, not the security interests of commercial financers. The lineage of Section 261 is traceable back into the nineteenth century, and the statute is hopelessly out of touch with the notice filing concept incorporated in Article Nine of the U.C.C. which was not widely enacted until 1955 through 1965. The Patent Act says nothing about the priority of either security interests or judgment liens. Thus, it makes good sense to leave this issue to the state law of Ar-

---

11. Although *Transportation Design, Otto Fabric*, and *Holt* all analyzed perfection issues under UCC § 9–104(a), we find the analysis applicable for purposes of the current discussion of federal preemption.

ticle Nine where it is specifically and carefully addressed.

. . . .

Similar caution is appropriate before determining that Article Nine has been preempted if the question arises whether section 261 governs a dispute between competing security interests. Once again, a security interest in an asset is not the equivalent of title to the asset. A secured party is not an assignee or a mortgagee. Only Article Nine contains an extensive treatment of secured party priority.

1C Peter F. Coogan et al., *Secured Transactions Under the Uniform Commercial Code* § 25.08[3][b][iii] (1999) (footnotes omitted).

Given the limited focus and skeletal nature of the Patent Act and its lack of reference to the creation and perfection .of security interests, we conclude that the Patent Act does not preempt state regulation of the perfection of security interests in patents. *See* 4 White & Summers, *Uniform Commercial Code* § 30–12.

D. *The Existence of the Patent Office Filing System Does Not Exclude Patents from the Article 9 Perfection Requirements*

■ Official Comment 8 to UCC 9–302 refers to three specific federal statutes that provide a filing system adequate to supersede the Article 9 filing system for perfection of security interests: 17 U.S.C.

§§ 28, 30 (copyrights),[12] 49 U.S.C. § 1403 (now § 44107) (aircraft),[13] and 49 U.S.C. § 20(c) (now § 11301) (railroads).[14] Each of those statutes clearly includes the filing of security interests within their scope, each requires that a security interest be filed within the applicable registry to obtain priority and perfection of a security interest, and each provides that a filing provides constructive notice of the security interest.

In contrast, the Patent Act is not sufficiently comprehensive to exclude state methods of perfecting security interests in patents. The Patent Act does not include security interests within any of the scope or definition provisions. Security interests in patents are not assignments governed by the mandatory recording provisions of § 261 of the Patent Act. Because the Patent Office records security interests on a discretionary basis and such recording does not provide constructive notice, the Patent Act registration system is insufficient to provide the sole method of perfecting security interests in patents.

## V. CONCLUSION

The bankruptcy court correctly determined that a security interest in the Patent was perfected by the filing of a UCC–1 Financing Statement with the California Secretary of State rather than with the Patent Office. Accordingly, Trustee was unable to avoid the security interest held

12. See discussion in part IV.C. above.

13. Unlike the Patent Act, 49 U.S.C. § 44107 provides explicit instructions for recording security instruments relating to aircraft:
   (a) Establishment of system.—The Administrator of the Federal Aviation Administration shall establish a system for recording—
   . . . .
   (2) leases and instruments executed for security purposes. . . .
   Under § 44108, the failure to file a security instrument with the FAA administrator pre-

cludes constructive ·notice of the existence of the security instrument and consequently limits the parties against whom it is valid.

14. Similarly, 49 U.S.C. § 11301(a) provides that a
   "mortgage . . . or security interest in vessels, railroad cars, locomotives, or other rolling stock . . . shall be filed with the Board in order to perfect the security interest that is the subject of such instrument. . . ."

by Matsco and Financial. Therefore, pursuant to the stipulation of the parties, the bankruptcy estate had no equity in the Patent and granting Matsco and Financial relief from the automatic stay to foreclose their lien in the Patent was not an abuse of the bankruptcy court's discretion. For these reasons we AFFIRM.